UNITED STATES of America,
Plaintiff,

v.

Jerry D. SCHURZ, Defendant.

No. EV 97–50–C Y/H.

United States District Court,
S.D. Indiana,
Evansville Division.

May 10, 2000.

Jeffrey L. Hunter, United States Attorney's Office, Indianapolis, IN, S. Robert Lyons, Stacy Hallett, U.S. Dept. of Justice, Washington, DC, for U.S.

Kevin R. Patmore, Price & Collins, Santa Claus, IN, for Jerry D. Schurz.

## ENTRY ON PENDING MOTIONS

YOUNG, District Judge.

The defendant, Jerry D. Schurz, prevailed in this tax case following a two-day trial that commenced on February 28, 2000. Specifically, a jury found that the relevant statute of limitations had expired. This matter is now before the court upon a motion by the plaintiff, the United States of America, for judgment as a matter of law or for a new trial. The United States also moves to dismiss Mr. Schurz's remaining counterclaim for lack of subject matter jurisdiction. For reasons that follow, the government's motion to set aside the jury's verdict is **DENIED**, while its motion to dismiss Schurz's counterclaim is **GRANTED**.

### I. Motion for a New Trial or Judgment as a Matter of Law

The United States contends that insufficient evidence supports the jury's verdict. In considering a motion for judgment as a matter of law after a verdict is returned,

the court has three options: "(A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law." FED.R.CIV.P. 50(b). Nevertheless, the court's discretion in this regard is far from unfettered. The court may only direct judgment as a matter of law on an issue where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," FED.R.CIV.P. 50(a), and a new trial can be granted "only if the verdict is against the manifest weight of the evidence," *Lowe v. Consolidated Freightways of Delaware, Inc.*, 177 F.3d 640, 641 (7th Cir.1999); *see also* FED.R.CIV.P. 59(a).

 This case concerned whether Mr. Schurz did anything to toll the statute of limitations for collecting certain trust fund taxes. *See* 26 U.S.C. § 6502(a). Mr. Schurz's signature on an IRS collateral agreement form 2261–C would have sufficed, and—as is relevant to the present motion—the government had the burden of proving that Mr. Schurz executed such a form back in 1983. The plaintiff contends that the IRS had sent Schurz a form 2261–C along with some other documents necessary to process a compromise resolving Schurz's tax liability. According to Mr. Schurz, he neither received nor executed the form.

At trial, the United States did not introduce a copy of the agreement, having supposedly destroyed the form (if a form there was) pursuant to administrative regulations. Instead, the government presented evidence from retired Revenue Officer Donald Kuhn to the effect that he had sent Mr. Schurz copies of the form, and that he had received signed copies from Schurz in the mail along with an offer in compromise. Mr. Kuhn's testimony was corroborated by: 1) a cover letter from Kuhn to Schurz stating that copies of a collateral agreement were enclosed (Exhibit 24); 2) a letter from Schurz's then-attorney David Price stating that he had "indicated to Mr. Kuhn that Jerry would be at his office at 9:00 a.m. on Monday *with all the documents signed*" (Exhibit 26) (emphasis added); 3) an abstract prepared by Mr. Kuhn stating that Mr. Schurz had agreed to waive the tax losses covered by the collateral agreement (Exhibit 31); 4) the testimony of other IRS agents that Mr. Schurz's packet of documents would have been required to include a collateral agreement, and that the packet would have been subject to several levels of review before its final approval; 5) an IRS letter saying that Schurz had submitted a collateral agreement (Exhibit 32); 6) a letter to Schurz from Price indicating that the IRS acceptance letter "clearly" sets forth the terms and conditions of the deal (Exhibit 36).

In Mr. Schurz's defense, he and Mr. Price took the witness stand. Schurz testified that he did not receive a form 2261–C in the packet of materials sent by the IRS, and that he therefore did not execute one. Price stated that he did not think he (Price) received, or that Schurz executed, the collateral agreement. Both Price and Schurz were impeached with their deposition testimony during cross-examination. In prior depositions, both witnesses had been more equivocal, saying that they didn't remember the collateral agreement, *see* Price dep. at 64, but assuming that it would have been signed if it had been submitted along with any other forms, *see* Schurz dep. at 71. Whether Schurz had signed such an agreement did not become an issue until trial,[1] at which time the witnesses had an opportunity to review their documents and give more accurate statements.

---

1. Prior to trial, the government had been proceeding only upon another legal theory—that Mr. Schurz had submitted an offer in compromise without striking the language of that form purporting to suspend the statute of limitations while the offer is considered. *See United States v. Schurz*, 82 A.F.T.R.2d 98–

7317, 99–1 USTC P 50,116 (S.D.Ind.1998); *United States. v. Schurz*, 1999 WL 593999, 84 A.F.T.R.2d 99–5318 (S.D.Ind.1999). It is somewhat understandable that the witnesses would give ambivalent deposition testimony about an antique document that they considered irrelevant to the case.

To mitigate the possibility of confusion from the ungainly language in 26 U.S.C. § 6502(a), the court put the case to the jury using two special interrogatories. The jury specifically found that Mr. Schurz did not execute a collateral agreement. In so deciding, the jury essentially made a credibility determination between Mr. Schurz and Mr. Kuhn—two men whose hazy recollections differed concerning whether they had seen a routine tax document some 17 years earlier. It is axiomatic that "questions concerning the credibility of witnesses are reserved for a jury to decide." *United States v. Griffin*, 194 F.3d 808, 817 (7th Cir.1999). *See also, e.g.*, *United States v. Fiore*, 178 F.3d 917, 924 (7th Cir.1999); *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir.1990). To be sure, Mr. Schurz's testimony was self-serving and, given the time lapse, rather dubious. But "[w]hen a jury has chosen to credit crucial testimony with full knowledge of the many faults of the witness providing it," the court has "no basis to interfere." *United States. v. Woolfolk*, 197 F.3d 900, 904 (7th Cir.1999). And although Mr. Kuhn's testimony was corroborated by his own letters and memoranda, the jury might have concluded that those documents were merely the boilerplate of an overworked IRS agent going through the motions. Indeed, the jury might have wondered why the IRS would have kept Mr. Kuhn's worthless notes but destroyed a document which proved the enforceability of an assessment worth several hundred thousand dollars.

In short, ample evidence supports the jury's verdict. The United States' motion for judgment as a matter of law or for a new trial is hereby **DENIED**.

## II. Motion to Dismiss

■ Mr. Schurz's pending counterclaim is for a refund of monies paid to the IRS after the statute of limitations had expired. "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (quotations omitted). The government's sovereign immunity can be waived, but only by act of Congress, *see e.g., United States v. Dalm*, 494 U.S. 596, 609–10, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), where the court's jurisdiction is "unequivocally expressed" in the statutory text. *United States v. Idaho ex rel. Idaho Dept. of Water Resources*, 508 U.S. 1, 6, 113 S.Ct. 1893, 123 L.Ed.2d 563 (1993); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). "Any such waiver must be strictly construed in favor of the United States," *Ardestani v. I.N.S.*, 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991), and not enlarged beyond what the language of the statute requires, *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–686, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

■ District courts have jurisdiction over claims against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected...." 28 U.S.C. § 1346(a)(1). However, such a claim cannot be maintained "until a claim for refund or credit has been duly filed with the Secretary [of the Treasury]." 26 U.S.C. § 7422(a). Mr. Schurz filed a claim for refund on March 16, 2000 (*see* plaintiff's exhibit A). His claim was untimely, however, because an administrative claim for a refund must be filed either three years from the time that the tax return was filed or two years from the time the tax was paid. 26 U.S.C. § 6511(a). Mr. Schurz has not identified any provision of the United States Code that waives the government's sovereign immunity on the facts of this case. Thus, his refund claim must be dismissed for lack of subject matter jurisdiction. The government's motion to dismiss is hereby **GRANTED**.